319 S.E.2d 775

**STATE of West Virginia**

v.

**C.N.S., et al., Infants, etc.**

**No. 16147.**

Supreme Court of Appeals of
West Virginia.

May 8, 1984.
Rehearing Denied July 11, 1984.

652

Roger D. Curry, Fairmont, for appellants.

Jay Montgomery Brown, Asst. Pros. Atty., Fairmont, for appellee.

McGRAW, Justice:

This is a child neglect case emanating from the Circuit Court of Marion County. By order entered September 21, 1983, the circuit court permanently terminated the parental rights of the appellants, D.E.S. and J.N.S., over their four children. On appeal the appellants contend that evidence does not support the termination of parental rights and that the circuit court erred in denying the appellants' motion for an improvement period prior to the entry of the order. We disagree, and we affirm the judgment of the circuit court.

These proceedings were instituted on November 5, 1982, upon the filing of a verified petition in the Circuit Court of Marion County by representatives of the West Virginia Department of Welfare. The Department sought immediate temporary custody

of the appellants' four infant daughters, then ranging in age from 2 months to 3½ years, on the ground that they were neglected children within the meaning of W.Va.Code § 49–1–3 (1980 Replacement Vol.).

The petition specified that the family had been referred to the Department's protective services in December 1981, and alleged a tendency on the part of the appellants to leave the jurisdiction during past investigations. By order entered the same day, the circuit court awarded the Department temporary legal custody of the children, with physical custody retained by the appellants, and appointed a guardian ad litem to represent the interests of the children.

The charge of neglect stemmed from the appellants' "inability to accept the responsibility involved in caring for their children." Exhibits attached to the petition and testimony adduced at preliminary hearings conducted on November 10, 1982 and December 9, 1982 showed that the children's father, D.E.S., then age 27, was totally disabled as a result of mental retardation and epilepsy of organic origin. D.E.S.' father, who also lived with the family, was characterized as an alcoholic and the dominant influence in the family.

The evidence also indicated that the children's mother and primary caretaker, J.N.S., then age 24, lacked fundamental parenting skills. Improper feeding habits had resulted in the hospitalization of the children for dehydration and for "failure to thrive", a condition characterized by failure to maintain normal weight gain. The youngest child had been hospitalized when she was less than a month old for choking after feeding, and the appellants' first child had died at the age of ten months after choking on a hot dog.

The Department also put on evidence to show that the appellants did not supervise or discipline the children. The older girls were allowed to roam about at will and to pick up and carry the babies. The children were often dirty and suffered from scabies and conjunctivitis. In addition, the appellants often delayed seeking necessary medical treatment for the children and frequently failed to keep the children's medical appointments. The appellants also demonstrated difficulty showing affection toward the children, and the two older girls had been classified as developmentally delayed.

Finally the evidence showed that the family had repeatedly failed to take advantage of support services, such as day care, parenting classes, homemaker services, family counseling and infant stimulation, which had been offered by the Department. Their failure to keep appointments made by the Department had resulted in the termination of the family's food stamps, AFDC benefits, and WIC coupons, which were used to buy formula for the babies.

On the basis of this evidence the Department originally recommended a three-month improvement period during which physical custody of the children would remain with the parents. In the interim between the preliminary hearings, however, the appellants' 2½ year-old child was hospitalized after an injury in the home. On November 19, 1982, the Department filed an amended petition seeking immediate temporary physical custody of all four children.

A hearing was conducted that same day at which the appellants put on evidence showing that the child, in an unsupervised moment, had caught her arm in the wringer mechanism of a washing machine when she attempted to put a piece of clothing through the wringer. Although the evidence showed that the injury was serious enough to require indefinite hospitalization and possible future skin grafts, no attempt was made to call an ambulance, and the child was not transported to the hospital for approximately an hour and a half. Upon admission to the hospital, the child was dirty, had scratches, scabs and bruises on her face and had head lice. The protective services worker who investigated the incident found the home disordered, dirty and infested with cockroaches on the day of the injury. At the conclusion of the hearing, the circuit court ordered all four children removed from the home and placed in the legal and physical custody of the

Department for a period not to exceed thirty days pending completion of the preliminary hearing.

When the preliminary hearing was resumed on December 9, 1982, testimony was offered to show that the appellants had improved the physical condition of the home. The evidence showed that they had fumigated the residence, painted the walls, installed carpeting and improved general housekeeping to the extent that the home provided an adequate physical environment for the children. Witnesses for the State noted, however, that the appellants continued to exhibit a general lack of knowledge about how to care for children and rarely followed up on Department recommendations for improving their parenting abilities.

At the conclusion of the preliminary hearing, the circuit court denied the appellants' motion for an improvement period for the purpose of correcting the conditions of neglect and ordered the Department's legal and physical custody to continue for a period not to exceed thirty days. The court further ordered the appellants to accept family counseling, to attend parenting and adult education classes and to submit to a psychological evaluation during this period.

Final hearings were conducted on January 7, 1983, and January 20, 1983. Testimony was offered to show the efforts of the appellants to maintain the improved physical condition of the home. It was also shown that they had complied with the conditions of the circuit court's order relating to counseling, education classes and psychological evaluations. On the witness stand, however, D.E.S. admitted that he had no idea why the Department had instituted proceedings for custody of the children, while J.N.S. explained that the proceedings were the result of their failure to keep appointments, to schedule regular meals and to spend more time with the children.

The psychologist who tested and interviewed the appellants expressed serious reservations as to the intellectual capacity of either parent to learn adequate child-rearing behavior or to acquire and maintain the parenting skills necessary to provide for the well-being of the children. He testified that both parents suffered from impaired short-term memory and had demonstrated an inability to follow instructions requiring timing and sequential skills. He also testified that the appellants' primary motivation in submitting to the circuit court's orders was their desire to have the children returned, rather than a desire to make a better home for them. He concluded from his experience in similar cases that, absent intensive training and direct supervision in the home, the appellants would revert to their former inadequate child-rearing practices once the children were returned to their custody. Department social services workers agreed with this assessment of the appellants' parenting capabilities and testified that the Department was unable to offer the type of intensive in-home training and supervision necessary to teach the appellants the proper skills.

On February 28, 1983, the guardian ad litem submitted to the court his written report of findings and recommendations. The guardian ad litem found no evidence of abuse and concluded that while the father, D.E.S., was unable to supply the children with the necessities of life, the mother, J.N.S., was capable of learning appropriate parenting behaviors. The guardian concluded, however, that neither parent would be able to provide the children with the kind of care they were receiving in the foster homes and recommended termination of the appellants' parental rights. Additional exhibits were submitted by both sides. On March 16, 1983, closing arguments were heard and the circuit court took the matter under advisement.

By letter dated September 6, 1983, the circuit court notified the appellants of his decision to terminate their parental rights. The court incorporated the findings of the guardian ad litem with the exception of the guardian's conclusion that the mother was capable of supplying the children with the necessities of life. The circuit court made a separate finding that the mother lacked the necessary basic parenting skills and

concluded that the children would continue to be neglected so long as they remained in the custody of their parents.

By order dated September 21, 1983, the circuit court found that the children were neglected within the meaning of Chapter 49, Article 6 of the Code and that there was no reasonable likelihood that the conditions of neglect could be substantially corrected in the near future. The court concluded that it was necessary for the welfare of the children to terminate the appellants' parental rights and ordered the children committed to the permanent guardianship of the Department of Human Services,[1] with full power and authority to provide for their adoption. It is from this order that the appellants appeal.

■ The appellants' first contention is that the circuit court erred in refusing to return the children to their custody for an improvement period for the purpose of correcting the conditions of neglect giving rise to the petition. W.Va.Code § 49-6-2(b) (1980 Replacement Vol.) permits a parent in a neglect proceeding to request, at any time prior to final hearing, an improvement period of from three to twelve months duration. The statute further provides that "[t]he court shall allow such an improvement period unless it finds compelling circumstances to justify a denial thereof, but may require temporary custody in the state department of another agency during the improvement period." The court's failure to state on the record the compelling circumstances warranting the denial of an improvement period under this section constitutes reversible error. *State v. Scritchfield*, 167 W.Va. 683, 280 S.E.2d 315 (1981). The appellants contend that there were no compelling circumstances specified by the circuit court which would justify the ruling.

■ The motion for an improvement period was made at the conclusion of the preliminary hearing conducted on December 9, 1982. The circuit court predicated its denial of the motion on the living conditions in the home and the appellants' total disregard, prior to the removal of the children from their physical custody, of the efforts of social service agencies to improve the conditions of neglect. The circuit court also expressed on the record strong feelings that recent efforts at ameliorating the conditions in the home would cease once the children were returned to the appellants' custody and noted the past propensity of the family to change residences and to leave the jurisdiction to avoid neglect charges.

We believe the circuit court demonstrated on the record sufficient justification for refusing to allow the appellants an improvement period. The evidence supports the conclusion that a potential danger existed to the welfare of the children if they were returned to the home. "In a case such as this where return of the child to the parents might result in their absconding the jurisdiction and removing the child from effective supervision, there are certainly compelling reasons to justify the denial of an improvement period." *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114, 117 (1980).

The appellants' second contention is that the circuit court abused its discretion in ordering the termination of their parental rights. They assert that the court did not follow the procedures set out in W.Va.Code § 49-6-1 *et seq.* (1980 Replacement Vol.) and that the evidence did not warrant imposition of the most extreme disposition under the statute.

■ We have long recognized that the fundamental right of a natural parent to custody of his or her minor children, though constitutionally protected, is not absolute and may be terminated by the State if the parent is shown to be unfit to care for the children. *In re Willis*, 157 W.Va. 225, 207 S.E.2d 129 (1973). The statutory procedure for terminating parental rights in child abuse and neglect cases is essentially a two-step process. In the initial phase, the circuit court is required by W.Va.Code § 49-6-2 to determine whether the child has been abused or neglected. *State v. T.C.*, 172 W.Va. 47, 303 S.E.2d 685

---

**1.** The West Virginia Department of Human Services is the successor to the West Virginia Department of Welfare. *See* W.Va.Code § 9-2-1a (1984 Replacement Vol.).

(1983). *"W.Va.Code,* 49–6–2(c) [1980], requires the State Department of Welfare, in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition ... by clear and convincing proof.' " Syllabus Point 1, in part, *In the Interest of S.C.,* 168 W.Va. 366, 284 S.E.2d 867 (1981).

■ Once there has been a proper finding of abuse or neglect, the proceedings move into the dispositional phase, which is governed by W.Va.Code § 49–6–5. The statute provides a number of dispositional alternatives which the court may consider, giving precedence to the least restrictive alternative appropriate to the circumstances. Termination of parental rights, the most restrictive alternative, is authorized only "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future, and when necessary for the welfare of the child." W.Va. Code § 49–6–5(a)(6). The State must produce clear and convincing evidence to support this finding before the court may sever the custodial rights of the natural parents. *State v. Carl B.,* 171 W.Va. 774, 301 S.E.2d 864 (1983); *In re Willis, supra.*

■ The appellants do not seriously contend that the circuit court erred in finding that the children were neglected within the meaning of the statute. The petition in this case was predicated upon the appellants' apparent intellectual inability to provide basic child care. In *State v. Scritchfield, supra,* 167 W.Va. at 691, 280 S.E.2d at 321, we stated:

We do not question that the definition of "neglected child" contained in W.Va. Code § 49–1–3 includes those children whose well-being is endangered or impaired by the inability of the parent, as the result of a mental condition, to perform the most fundamental and essential of the parental obligations—to feed, clothe, shelter, supervise, educate and provide medical care. Under such circumstances, neglect may be proved upon a showing of an ongoing condition or course of conduct which has been or is likely to be detrimental to the physical or mental well-being of the child and which

the parent has been unwilling or unable to correct.

The State here presented clear and convincing evidence of "an on going condition or course of conduct" amounting to neglect on the part of the appellants at the time the petition was filed and ample evidence of their failure up to that time to correct their conduct.

The appellants do assert error, however, at the dispositional stage of the proceedings. They contend that the circuit court's order violated W.Va.Code § 49–6–5 in that no consideration was given to any less restrictive dispositional alternative than severance of the parental rights and that the State did not meet its burden of showing "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected."

■ In *In re R.J.M., supra,* we noted that although W.Va.Code § 49–6–5 requires the court to give precedence to the least restrictive dispositional alternative, "courts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened...." Syllabus Point 1, in part. We held at Syllabus Point 2:

Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, *W.Va.Code,* 49–6–5 [1977] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under *W.Va.Code,* 49–6–5(b) [1977] that conditions of neglect or abuse can be substantially corrected.

Consequently the determination of whether the circuit court here properly ordered the most restrictive disposition turns on the propriety of its finding that there was no reasonable likelihood of correcting the conditions of neglect found to exist at the time the petition was filed.

As we implied in *In re R.J.M., supra,* to support a finding of "no reasonable likeli-

hood that the conditions of neglect or abuse can be substantially corrected", the circuit court must find the existence of one or more of the statutory grounds enumerated in W.Va.Code § 49–6–5(b).[2] The court here found that the appellants "have not responded to or followed through with reasonable rehabilitation efforts of social, medical, mental health, or other rehabilitative agencys [*sic*]", as provided by W.Va. Code § 49–6–5(b)(3).

We believe the evidence presented by the State clearly supports this finding. It is uncontroverted that for almost a year prior to the filing of the petition the appellants had repeatedly failed to avail themselves of numerous support services offered by the Department. During this period the Department prepared no less than six comprehensive rehabilitative plans to assist the parents in improving the quality of their child care, none of which was completed. Social service workers testified that although the appellants appeared receptive to their suggestions, they rarely followed up on them. Moreover, the evidence shows that the appellants' pattern of disregarding Department recommendations for improving their parenting skills continued even after the petition was filed and the children were removed from the home.

The appellants point out that they did make efforts to improve and maintain the physical condition of the home and attended family counseling sessions and adult education classes. We agree that to this extent they responded to the Department's rehabilitative efforts. The evidence also shows, however, that the appellants did not take these steps until ordered to do so by the circuit court.

In addition, the State's evidence indicated that the appellants' failure to respond to the recommendations of the Department resulted from a limited ability to comprehend the necessity to improve the quality of their child care. The psychologist testified that neither parent really understood why the Department had instituted neglect proceedings, and the appellants themselves were unable to articulate with clarity the conditions which had ultimately resulted in the removal of the children from the home. The expert testimony also indicated that the intellectual capacity of both parents was such that the services available through the Department would be ineffectual in teaching them to modify their behavior so as to provide adequate parenting for the children.

In short, the State produced clear and convincing evidence to show that not only had the appellants failed to respond to or follow through with Department efforts to correct the conditions of neglect in the past, but also that they were intellectually incapable of doing so in the future. In view of the evidence indicating a substantial probability that the conditions of neglect would recur if the children were returned to the custody of the parents, we cannot say that the circuit court abused its discretion in finding "no reasonable likelihood that the conditions of neglect can be substantially corrected" and in terminating the appellants' parental rights pursuant to the provisions of W.Va.Code § 49–6–5.

As a final matter we note that the truly tragic aspect of this case is that the evi-

---

**2.** W.Va.Code § 49–6–5(b) states:

As used in this section, "no reasonable likelihood that conditions of neglect or abuse can be substantially corrected" shall mean that: (1) the parent or parents have habitually abused or are addicted to intoxicating liquors, narcotics or other dangerous drugs to the extent that proper parenting ability has been seriously impaired and the parent has not responded to or followed through with recommended and appropriate treatment which could have improved the capacity for adequate parental functioning; (2) the parent or parents have willfully refused or are presently unwilling to cooperate in the development of a reasonable foster care plan designed to lead to the child's return to the parent or parents; (3) the parent or parents have not responded to or followed through with reasonable rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the neglect or abuse of the child, as evidenced by the continuation of substantial or repeated acts of neglect or abuse after the provision of such services; (4) the parent or parents have abandoned the child; or (5) the parent or parents have repeatedly or seriously physically abused the child.

dence indicates that the appellants bear genuine love and affection for their children. There was no evidence of any deliberate misconduct or malicious neglect. Much as we might sympathize with the appellants' feelings of loss, however, we cannot ignore the fact that they simply do not have the ability to function adequately as parents. Consequently we conclude that the State was justified in intervening in this case to protect the welfare of the children.

Accordingly, we affirm the judgment of the Circuit Court of Marion County permanently terminating the parental rights of the appellants and placing the four infant children in the permanent custody of the Department of Human Services.

Affirmed.