# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**In re: M.P., L.P., S.Y., & A.Y.,**

**No. 15-0118** (Fayette County 14-JA-85, 14-JA-86, 14-JA-87, & 14-JA-88)

**FILED**

November 23, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother, by counsel Kelly C. Pritt, appeals the Circuit Court of Fayette County's January 13, 2015, order dismissing the underlying abuse and neglect action and transferring custody of the children from petitioner to the children's respective biological fathers. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed its response in support of the circuit court's order and a supplemental appendix, by leave of this Court. The guardian ad litem ("guardian"), Jennifer M. Alvarez, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in transferring custody of the children to their respective biological fathers in this abuse and neglect proceeding when no finding of abuse or neglect was made and the matter was dismissed.[1]

After a careful review of the appendix record submitted on appeal, the written arguments of counsel, and the applicable precedent, this Court determines that the circuit court erred by transferring custody of the children to their respective fathers having dismissed this abuse and neglect action with no finding of abuse or neglect. However, we affirm the circuit court's dismissal of the underlying action. Because our decision in this matter is dictated by well-settled law, we conclude that this case satisfies the "limited circumstances" provision in Rule 21(d) of the Rules of Appellate Procedure for reversal and remand in a memorandum decision. As such, by this memorandum decision, we affirm, in part, and reverse and remand, in part, the circuit court's January 13, 2015, order.

Petitioner has four children at issue in this appeal. The two older children, twelve-year-old M.P. and ten-year-old L.P., are the children of petitioner and J.P. The two younger children, six-year-old S.Y. and four-year-old A.Y., are the children of petitioner and M.Y. In 2008, petitioner and J.P. divorced by order of the Family Court of Fayette County. By that divorce order, the family court granted petitioner sole custody of M.P. and L.P. Moreover, J.P. was granted no parenting time with those two children.

Although the exact dates are unclear from the record on appeal, petitioner, sometime thereafter, married M.Y. Prior to the filing of the underlying abuse and neglect action in June of 2014, petitioner and M.Y. also divorced. By that divorce order, the family court granted

---

[1]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

1

petitioner primary custody of S.Y. and A.Y. While, M.Y. was permitted to exercise limited parenting time.

In April of 2014, the DHHR received a referral that M.Y., after exercising his parenting time, returned his children, S.Y. and A.Y., to petitioner with bruises on the children's arms and legs. According to the referral, M.Y. failed to properly supervise his children and left them in the care of an alcoholic individual. On the same date that the DHHR received the referral, petitioner filed a petition for domestic violence protective order against M.Y. on behalf of S.Y. and A.Y. alleging physical abuse, failure to provide proper supervision or necessities such as clothing, and general acts of violence toward others. Based on the domestic violence petition, petitioner was granted temporary sole custody of S.Y. and A.Y., but M.Y. was granted limited, supervised visitation.

In June of 2014, the family court held a hearing on the petition for domestic violence order. At that hearing, petitioner requested that her petition be withdrawn. However, the family court noted that petitioner appeared sluggish and "could not keep her eyes open." Based on petitioner's condition at that hearing, the family court denied her request to withdraw the petition on the ground that her decision to do so was not intelligently and knowingly made. The family court further found that petitioner "made derogatory remarks and cursed the [family] court upon leaving the courtroom, which further calls into question her sobriety." Thereafter, petitioner submitted herself to a drug screen, which resulted in a positive test for opiates, morphine, and benzodiazepine. The family court concluded petitioner was "clearly not in any condition to have any custodial responsibilities [for all four of her children] at this time" and placed temporary custody of her children in the DHHR pending further court proceedings.

Several days later, the DHHR filed the underlying abuse and neglect petition against petitioner, alleging that she abused controlled substances, and against M.Y., alleging that he physically and emotionally abused S.Y. and A.Y. The father of petitioner's other children, J.P., was named as a respondent in that abuse and neglect petition but only as a statutory requirement; no allegations were made against J.P. That abuse and neglect petition was later amended but, with respect to petitioner, the only substantive change in the amended petition was the addition of statements made by the children claiming she often slept and enlisted a babysitter who had a substantiated history with Child Protective Services ("CPS").

In July of 2014, the circuit court held a preliminary hearing on the abuse and neglect petition. The DHHR established that no allegations were made against J.P., but it was noted that he was $8.62 in arrears for his child support obligation. A CPS worker testified as to the allegations detailed in the amended abuse and neglect petition. In her defense, petitioner testified that she filed a domestic violence petition against M.Y. for his physical abuse, but that she had been hospitalized immediately prior to the hearing on that petition. She further claimed that during her hospitalization she was prescribed pain medication, which resulted in her behavior and condition at the June 17, 2014, hearing as well as the positive drug screen results. Based on the evidence, the circuit court found probable cause for the removal of the children and set the matter for an adjudicatory hearing.

In August of 2014, the circuit court held an adjudicatory hearing. Petitioner and M.Y. moved for pre-adjudicatory improvement periods, and, without objection, the circuit court granted the same. Petitioner's pre-adjudicatory improvement period included terms and conditions that she sign a release of all medical records; perform and cooperate with the recommendations of a psychological evaluation; not consume any alcohol or controlled substances without a valid prescription; immediately notify the DHHR of any newly prescribed medications; and not get pregnant.

Between August of 2014 and November of 2014, the circuit court held three improvement period review hearings. During that time, the children's respective fathers began receiving unsupervised visitation with the children. Although petitioner's psychological evaluation found concerns with her ability to improve as a parent, evidence established that she was following the psychologist's recommendations. Further evidence revealed that one child "missed a bunch of school" while in petitioner's care and that petitioner's medical records, such as one doctor's report that petitioner had likely fabricated back pain to secure medication, indicated that she exhibited "drug-seeking" behavior. However, these concerns arose prior to petitioner's participation in her pre-adjudicatory improvement period, and the DHHR did not file a new or amended abuse and neglect petition against petitioner alleging any additional concerns with truancy or "drug-seeking" affecting her parenting.

In December of 2014, the circuit court held a final hearing in this matter. The DHHR informed the circuit court that petitioner and M.Y. had successfully completed their pre-adjudicatory improvement periods. The evidence showed that petitioner had appropriate housing and employment, and completed her services. The DHHR recommended that the abuse and neglect action be dismissed as to all parties, including M.Y. and K.Y. However, the DHHR further recommended that primary custody of the children be granted to the respective fathers— J.P. and M.Y. The DHHR explained its continued concern with petitioner and pain medication. The DHHR stated that she had undergone surgery during the first week of her unsupervised visitation with the children and had received pain medication during her surgery and during her subsequent hospitalization. Moreover, the DHHR claimed that, by the time of that hearing, L.P. had been placed with J.P. for several months and had progressed physically while under his care.[2] Prior to the conclusion of the hearing, each of the parents requested primary custody of their respective children. By order entered on January 13, 2015, the circuit court dismissed the abuse and neglect action with no finding of abuse or neglect against petitioner, but, in that order, it transferred custody of the children to their biological fathers with any visitation or change in custody for petitioner to be determined by the family court. This appeal followed.

This Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether

---

[2]Although unclear from the record on appeal, it appears that L.P. had used a wheelchair while in petitioner's care but had progressed to walk on her own while living with J.P.

such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner's sole assignment of error is that the circuit court erred in transferring custody of the children from petitioner to their respective fathers when the abuse and neglect action was dismissed with no finding of abuse or neglect. We addressed a similar concern in the recent case of *In re Kasey M.*, 228 W.Va. 221, 719 S.E.2d 389 (2011). In *Kasey M.*, we considered "whether the circuit court had authority to transfer custody of [a subject child] to [a respondent parent], in an abuse and neglect proceeding, when the allegations of abuse and neglect against him were dismissed." *Id.* at 223, 719 S.E.2d at 391. In that case, the subject child was in the custody of the respondent father prior to the filing of the abuse and neglect petition. *Id.* While the circuit court dismissed that petition without a finding of abuse or neglect, it nevertheless transferred custody of the subject child to the respondent mother. *Id.* We found that the circuit court in abuse and neglect proceedings lacked the authority to modify child custody, which was effectively a dispositional alternative, without having first found the presence of abuse or neglect. *Id.* at 225, 719 S.E.2d at 393. In arriving at that conclusion in *Kasey M.*, we explained that

> [i]n a child abuse and neglect hearing, before a court can begin to make any of the dispositional alternatives under W.Va. Code [§] 49-6-5, it must hold a hearing under W.Va. Code [§] 49-6-2, and determine "whether such child is abused or neglected." Such a finding is a prerequisite to further continuation of the case.

228 W.Va. at 225, 719 S.E.2d at 393 (citing Syl. Pt. 1, *State v. T.C.*, 172 W.Va. 47, 303 S.E.2d 685 (1983)); *see also State v. C.N.S.*, 173 W.Va. 651, 656, 319 S.E.2d 775, 780 (1984) (stating that "[o]nce there has been a proper finding of abuse or neglect, the proceedings move into the dispositional phase, which is governed by W.Va. Code § 49-6-5.").

In this matter, while we appreciate the circuit court's motivations and the arguments of the DHHR and guardian that the children's current placements have proven beneficial to them, our law is clear that a finding of abuse or neglect is a prerequisite to a final change in custody or other such disposition in abuse and neglect proceedings. *See also* Syl. Pt. 8, *In re Antonio R.A.*, 228 W.Va. 380, 719 S.E.2d 850 (2011) (holding that "[w]hile courts always look to the best interests of the child in controversies concerning his or her custody, such custody should not be denied to a parent merely because some other person might possibly furnish the child a better home or better care." (citations omitted)). As noted in *Kasey M.*:

> To the extent that the circuit court believed that [the subject child] should be removed from the custody of [the respondent father], it could have rejected DHHR's decision to drop all allegations against [the respondent father] and forced the case to be litigated on the merits to determine whether [the subject child] was an abused or neglected child. This was not done, and, consequently, the circuit court's authority was limited to ordering [the subject child] to be returned to [the respondent father].

228 W.Va. at 225, 719 S.E.2d at 393; *see also In re F.S.*, 233 W.Va. 538, 759 S.E.2d 769 (2014) (stating that "[i]f a court does not make that initial finding of abuse [or neglect], no further action is permitted in the abuse and neglect realm."). Here, as in *Kasey M.*, because the matter was dismissed with no finding of abuse or neglect, the circuit court's authority was limited to ordering the children returned to petitioner, who undisputedly had custody of all four children prior to the filing of the underlying abuse and neglect petition.

For the foregoing reasons, the circuit court's January 13, 2015, order transferring custody of the children from petitioner to their respective fathers absent a finding of abuse or neglect is hereby reversed and remanded to the circuit court for entry of an order transitioning the children into petitioner's custody. However, as no assignments of error are raised as to the dismissal of the underlying abuse and neglect petition, we hereby affirm the order to the extent it dismissed the underlying abuse and neglect petition.

We remind the circuit court of the need, when possible, to gradually transition children from one placement to another. As we held in Syllabus Point 5 of *In re C.M.*, 235 W.Va. 16, 770 S.E.2d 516 (2015):

> "It is a traumatic experience for children to undergo sudden and dramatic changes in their permanent custodians. Lower courts in cases such as these should provide, whenever possible, for a gradual transition period, especially where young children are involved. Further, such gradual transition periods should be developed in a manner intended to foster the emotional adjustment of the children to this change and to maintain as much stability as possible in their lives." Syl. Pt. 3, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

Upon remand, we direct the circuit court to expeditiously set this matter for a hearing to establish a clear, gradual transition plan for reunification of the children with petitioner. The Clerk of this Court is hereby ordered to issue this Court's mandate contemporaneously herewith.

Affirmed, in part, and reversed and remanded, in part.

**ISSUED**: November 23, 2015

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum

**CONCURRING AND WRITING SEPARATELY:** Justice Allen H. Loughry II

Loughry, Justice, concurring:

I concur in the majority's conclusion that the circuit court lacked authority in this proceeding to transfer child custody absent a finding of abuse or neglect. Nonetheless, while the circuit court employed the wrong legal mechanism to transfer custody, it is clear that the circuit court's goal was to ensure the children's best interests. The record before this Court indicates that the fathers have demonstrated improved parenting and that the children have benefited from residing in their fathers' care. I write separately to note that our decision today does not foreclose the fathers from filing, in family court, a petition for modification of custody based on the current circumstances of these children and their parents. As Chief Justice Workman pointed out in her concurrence to *In re Kasey M*., "[t]he proper means of seeking the change of custody would be a petition for modification." 228 W.Va. 221, 226, 719 S.E.2d 389, 394 (2011); *see* W.Va. Code § 48-9-401(a) (2014) (providing that "a court shall modify a parenting plan order if it finds . . . that a substantial change has occurred in the circumstances of the child or if one or both parents and a modification is necessary to serve the best interests of the child.").

Accordingly, I respectfully concur.