**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

*In re* **A.D. and L.D.**

**No. 20-0727** (Grant County 18-JA-47 and 18-JA-48)

**MEMORANDUM DECISION**

Petitioner Mother K.D., by counsel Jeremy B. Cooper, appeals the Circuit Court of Grant County's August 21, 2020, order terminating her parental rights to A.D. and L.D.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Meredith H. Haines, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights upon a finding that there was no reasonable likelihood that she could substantially correct the conditions of abuse and neglect at issue.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Beginning in July of 2018, the DHHR received ten referrals concerning petitioner's conduct that included allegations of physical abuse, domestic violence, malnutrition, and failure to properly supervise the children, among other issues. Although some of the referrals could not be substantiated and/or did not rise to the level of abuse or neglect, the DHHR did substantiate abusive or neglectful conduct, and the DHHR filed an abuse and neglect petition in September of 2018. Therein, the DHHR alleged that petitioner's home was chronically unsanitary due to feces throughout the home. According to the petition, L.D. "walk[s] through the feces in the floor, rolls in it when playing and is filthy." The DHHR also alleged that the home was infested with

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

cockroaches, as the person who reported the matter witnessed cockroaches crawling out of L.D.'s ears and on his food. The DHHR also alleged that the home lacked water and electricity for approximately five to seven months. During the DHHR's investigation, a worker found the home in an unsanitary condition and without electricity, as reported. The worker also observed feces on A.D., who had to be bathed "due to her odor and filth." According to the DHHR, L.D. was not properly fed or supervised. The DHHR also alleged that petitioner and her husband engaged in domestic violence in the home. Further, the worker who investigated the matter stated that petitioner's husband had been recently arrested on assault charges and the two of them were not supposed to be together as a condition of the husband's bond; however, the worker observed them together in the home.

Following the petition's filing, petitioner waived her preliminary hearing. At an adjudicatory hearing in November of 2018, petitioner stipulated that she exposed the children to domestic violence and failed to provide a safe and suitable environment for them. Petitioner was then granted a post-adjudicatory improvement period.

As early as October of 2018, the parties expressed concerns with petitioner's visitation with the children. At that time, petitioner's husband was observed at the visitation location, despite the fact that he was required to have no contact with petitioner as a condition of his bond. Further, in December of 2018, the guardian expressed concern over petitioner's failure to interact with the children. According to the guardian, petitioner spent the vast majority of her visits on her phone. In February of 2019, the court was informed of concerns raised by several individuals regarding petitioner's inability to console A.D. during visits after the child would become extremely upset. In May of 2019, the parties expressed concerns over petitioner bringing a boyfriend to her parenting classes and missing some visits with the children. At a hearing in August of 2019, the circuit court was presented with concerns from a visitation supervisor over petitioner's failure to properly feed A.D. during visits or appropriately interact with L.D.

In September of 2019, the parties appeared for a dispositional hearing. According to the circuit court, visitation supervisors at the hearing presented conflicting testimony about petitioner's progress. As a result, the court found that it could not return the children to petitioner's care, but also found that it could not terminate petitioner's parental rights. As such, the court granted petitioner a post-dispositional improvement period and ordered that she undergo a parental fitness evaluation. At a hearing in December of 2019, a Child Protective Services ("CPS") worker testified that petitioner's residence lacked heat and that petitioner's mother, who was believed to have an extensive CPS history, was present in the home. The court ruled that petitioner could exercise visitation with the children in the home when she provided documentation of proper heating and that the maternal grandmother not be present during the visits.

Finally, the court held dispositional hearings in July and August of 2020. Based on the evidence, the circuit court found that one of petitioner's visitation supervisors, Megan Wells, had concerns about petitioner's conduct since the case began. According to Ms. Wells, her concerns had not been alleviated as of disposition because petitioner failed to make progress. Ms. Wells testified to consistent problems in petitioner's parenting, such as failing to offer the children drinks during visits or providing them with moldy food or food from visibly dirty containers. Ms.

Wells also testified that petitioner failed to engage with both children and failed to give L.D. proper attention. Ms. Wells further noted that L.D. appeared to parent the younger A.D., with whom petitioner did not appear to have a bond. In fact, the reports from petitioner's visits indicated that petitioner would not check A.D.'s diaper during visits. According to Ms. Wells, she often prompted petitioner during these visits, but petitioner did not always follow her prompts. The court did note, however, that Ms. Wells' testimony was "in contrast to the testimony presented by" a different provider.

One of petitioner's other service providers, Kayla Saville, testified to observing A.D.'s specific needs and petitioner's inability to meet them during visits. Corroborating the testimony from Ms. Wells, Ms. Saville indicated that petitioner could not follow prompts and had difficulty retaining information across visits. According to Ms. Saville, petitioner simply did not benefit from services. The children's foster mother testified to having observed petitioner fall asleep during a remote visit with the children. The foster mother also testified that she witnessed petitioner talk to six-year-old L.D. as if he were a baby, causing concern that petitioner did not understand L.D.'s development. The circuit court also heard testimony from a developmental specialist with Birth to Three who provided A.D. services for approximately two years to assist with the child's sensory issues. According to the witness, parenting a child with these issues would require a tremendous effort. The witness also testified to having observed petitioner with the child and stated that she did not believe petitioner had the ability to properly care for A.D. Finally, the psychologist who performed petitioner's parental fitness evaluation testified that he did not believe petitioner had the parental capacity to properly care for the children. The psychologist also indicated that petitioner's scores on the Child Abuse Potential Inventory were invalid because of her elevated lie score.

In reaching its final determination, the court recognized the extensive delays in the proceedings and noted that although some delay could be attributed to COVID-19, "much of the delay in the case was due to attempts to provide [petitioner] with more time to be able to demonstrate . . . that she can effectively and safely parent" the children. The court further noted that "there is a difference between completing what is asked of you during an improvement period and actually improving." According to the circuit court, "'[c]hecking the boxes off' does not always correlate to actual improvement." The court recognized petitioner's accomplishments during the proceedings, including having obtained employment and housing and her participation in services. However, the court found that the evidence established that petitioner was unsuccessful in her improvement period. The court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the children's welfare. As such, the court terminated petitioner's parental rights.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

---

[2]The parental rights of the children's fathers were either voluntarily relinquished or terminated below. The permanency plan for the children is adoption together in the current foster home.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that it was error to terminate her parental rights upon a finding that there was no reasonable likelihood that she could substantially correct the conditions of abuse and neglect in the near future. Petitioner focuses her argument on the circuit court's finding that she failed to successfully complete her improvement period, which she also alleges was in error. According to petitioner, she achieved every stated goal of her case plan by obtaining employment and housing, completing a psychological evaluation and following its recommendations, participating in adult life skills and parenting classes, and avoiding inappropriate people. Petitioner argues that the DHHR failed to satisfy the clear and convincing burden necessary to support termination of her parental rights and asserts that "any evidentiary record that would support the notion that she continues to have unacceptable parenting deficits is hopelessly conflicted." We do not agree.

Petitioner's argument on appeal reflects a superficial recitation of those few facts that support her position and a failure to fully appreciate that her compliance with services alone was insufficient to remedy the conditions of abuse and neglect at issue. Petitioner acknowledges the following:

We have long recognized that "it is possible for an individual to show 'compliance with specific aspects of the case plan'" while failing "to improve . . . [t]he overall attitude and approach to parenting." *W. Va. Dept. of Human Servs. v. Peggy F.*, 184 W.Va. 60, 64, 399 S.E.2d 460, 464 (1990).

*State ex rel. W. Va. Dep't of Health and Human Res. v. Dyer*, 242 W. Va. 505, 519, 836 S.E.2d 472, 486 (2019). Despite this recognition, petitioner simply lists the specific goals she believes that she satisfied without acknowledging the extensive testimony that she was unable to implement the instruction she was provided or meaningfully remedy the conditions of abuse or neglect at issue such that she could appropriately parent the children. As the circuit court noted, petitioner merely "check[ed] the boxes" of her case plan without meaningfully correcting her behavior.

4

Petitioner argues that because the finding that she failed to successfully complete her improvement period was not supported by clear and convincing evidence, then the finding that there was no reasonable likelihood that she could substantially correct the conditions of abuse and neglect must necessarily have also lacked appropriate support. Given that we find the circuit court did not err in determining that petitioner was unsuccessful in her improvement periods, we similarly find no error in the determination that there was no reasonable likelihood petitioner could correct these conditions. Underlying both of petitioner's arguments is her reliance on testimony from one visitation provider that conflicted with testimony from other service providers. As noted above, the circuit court specifically addressed these inconsistencies but found that the overwhelming evidence from several service providers and the psychologist who evaluated petitioner outweighed the testimony from this lone provider. As we have routinely held, "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). The court below recognized the conflicting evidence presented and made its own determination as to the weight of this evidence. We will not disturb these determinations on appeal.

Contrary to petitioner's argument that the circuit court had insufficient evidence upon which to terminate her parental rights, we find that the DHHR satisfied its burden of proof. As we have held,

> [t]ermination of parental rights, the most restrictive alternative, is authorized only "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future, and when necessary for the welfare of the child." W.Va. Code § [49-4-604(c)(6)]. The State must produce clear and convincing evidence to support this finding.

*State v. C.N.S.*, 173 W. Va. 651, 656, 319 S.E.2d 775, 780 (1984). As laid out above, several of the service providers who observed petitioner interacting with the children testified that she was not implementing what she was taught through services and demonstrated an inability to properly care for the children. This was especially true in regard to A.D., who suffers from sensory issues that require more intensive care. Further, the psychologist who evaluated petitioner testified that she did not have the parental capacity to adequately care or provide for her children. Petitioner argues that the psychologist originally did not reach this conclusion and that it was only after the DHHR provided the psychologist with information from its files that he changed his recommendation. Petitioner also asserts that this change in the assessment was based entirely on information about her conduct prior to the filing of the petition in this matter. That is simply not the case. Instead, the record shows that the psychologist's initial report was based entirely on petitioner's recitation of events. Indeed, the initial report indicates that no records, other than the order directing petitioner to undergo the evaluation, were reviewed. However, once the psychologist was provided with the DHHR's records, he submitted an addendum and changed his conclusion concerning petitioner's ability to parent the children. On appeal, petitioner fails to explain how providing the psychologist with a clearer understanding of her abusive and neglectful conduct undermines the psychologist's ultimate conclusion that she was unfit to properly parent the children.

As set forth in West Virginia Code § 49-4-604(d) "'[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." This is precisely what the evidence below established. Despite the circuit court granting petitioner two improvement periods and allowing petitioner ample time to correct the conditions of abuse and neglect, it was clear at the final dispositional hearing that petitioner had simply not internalized her instruction in a way that allowed her to properly care for the children. As we have explained, "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014). While petitioner asserts that she completed all that was asked of her, she ignores the fact that the children's best interests necessitated termination of her parental rights. As the circuit court found, there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and termination of her parental rights was necessary for the children's welfare. West Virginia Code § 49-4-604(c)(6) permits the termination of parental rights upon these findings. Further, as this Court has held,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 21, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: April 20, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison

**DISSENTING:**

Justice William R. Wooton