**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **R.W.**

**No. 21-0016** (Harrison County 19-JA-164-1)

**MEMORANDUM DECISION**

Petitioner Father J.W., by counsel Daniel K. Armstrong, appeals the Circuit Court of Harrison County's December 7, 2020, order terminating his parental, custodial, and guardianship rights to R.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Jenna L. Robey, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner alleges that the DHHR failed to satisfy the burden of proof required for termination of parental rights, failed to provide him with a fundamental level of fairness, and failed to consider the least restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2019, the DHHR filed an abuse and neglect petition[2] alleging that the mother gave birth to the child and admitted to abusing heroin and methamphetamine during the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Neither petitioner, in his appendix record, nor the DHHR, in its supplemental appendix record, included a copy of the DHHR's original petition for this Court's review. Therefore, the

(continued . . .)

1

pregnancy, including "a couple days prior to delivery." The DHHR also alleged that petitioner admitted to abusing methamphetamine the week prior to the delivery and either knew or should have known about the mother's substance abuse while pregnant. Further, both parents admitted to a long history of substance abuse, and that the mother previously voluntarily relinquished her parental rights to three older children. Following the petition's filing, petitioner waived his preliminary hearing.

In October of 2019, the court granted petitioner's motion for a preadjudicatory improvement period based upon representations that he was complying with services. As part of his improvement period, petitioner was required, in part, to submit to random drug screens, with the understanding that missed screens would be counted as positive; participate in supervised visits with the child; participate in parenting classes; and attend any and all recommended counseling. The following month, however, the guardian filed a motion to revoke petitioner's improvement period.

Also in November of 2019, the DHHR filed an amended petition alleging that on October 3, 2019, petitioner was arrested for possession of a controlled substance. According to the criminal complaint, petitioner "was found in possession of 7.68 grams of a crystal[-]like substance, sandwich bags, and a digital scale." The amended petition also alleged that petitioner "became argumentative regarding continued drug screening" during a multidisciplinary team ("MDT") meeting. According to the DHHR, petitioner asserted that screening was overly burdensome to him even though he had yet to obtain employment. Petitioner thereafter stipulated to his adjudication, and the circuit court adjudicated him to be a neglecting parent in December of 2019. The circuit court also granted petitioner a post-adjudicatory improvement period that required him, in part, to complete a psychological evaluation and follow any recommendations thereof, participate in individualized parenting services, participate in any counseling deemed necessary, cooperate with all service providers, and submit to random drug screens. In August of 2020, the court extended petitioner's improvement period upon evidence that he successfully completed individualized parenting classes, adult life skills classes, and was employed. Further, although petitioner missed some drug screens due to his employment, he tested negative throughout the proceedings to that point.

In September of 2020, the guardian filed a motion to revoke petitioner's improvement period upon allegations that petitioner "became argumentative regarding the length of time of these proceedings, being held accountable for [the mother], and the inconvenience of drug screening." The guardian also asserted that after the MDT meeting, petitioner continued to use aggressive language during communications between the mother and her counsel and also with the DHHR. In regard to drug screening, the guardian indicated that petitioner tested positive for methamphetamine and oxycodone on August 21, 2020, and missed approximately seven screens between June and August of 2020. Further, the guardian cited to discovery in the matter that included messages between petitioner and the mother that evidenced petitioner's admission of substance abuse on multiple occasions and his continued sale of drugs. Based on this conduct,

information concerning the allegations in the petition is drawn from other materials in the appendix record.

the guardian and the DHHR[3] sought termination of petitioner's improvement period. Petitioner filed a response to the motion, wherein he admitted that "he made a one-time mistake with regards to his sobriety" as evidenced by his positive screen in August of 2020.

In November of 2020, the circuit court held a dispositional hearing, during which evidence was introduced that petitioner failed at least three additional drug screens in September and October of 2020. Petitioner testified during the hearing that he did not have a substance abuse problem, although he admitted to snorting methamphetamine and oxycodone just prior to August 21, 2020. The DHHR also admitted into evidence text messages that the mother confirmed were between her and petitioner. In the messages, the mother asked petitioner several times if he had abused controlled substances during the proceedings, and, petitioner confirmed each time that he had, including "meth [and] pills." In one text message, petitioner asked the mother "if she can move some weed," which the mother confirmed related to petitioner selling marijuana. The DHHR also introduced testimony from Kenneth Lewis, the lab director for OpAns, the facility that analyzed petitioner's drug screen samples. Mr. Lewis was qualified as an expert in this field and testified to the drugs for which petitioner tested positive and the levels of various drugs present in these samples. According to Mr. Lewis, even though petitioner's methamphetamine levels were low, there was "no question that it could be any other substance." Further, Mr. Lewis testified that packaging methamphetamine could cause an individual to test positive for the substance. As to oxycodone, Mr. Lewis testified that, in his opinion, petitioner purposefully ingested the drug because it is found in pill form and, thus, unlikely to have been the result of environmental exposure.

Based on this evidence, the court found that although Mr. Lewis testified that the methamphetamine levels present in petitioner's blood could be due to environmental exposure, an individual living in a drug-free environment would not test positive for illicit substances. Importantly, the court concluded that "[i]f [petitioner] cannot protect himself from becoming contaminated, he cannot protect the minor children from the same." The court also found that petitioner denied a substance abuse problem throughout the proceedings and, instead, blamed his substance abuse on the stress and length of the proceedings. Accordingly, the court found that petitioner "continues to have a substance abuse problem which he has failed to acknowledge." The court further found that, despite the proceedings having been ongoing for over one year, petitioner was "in no better position than he was at the time of the filing of this [p]etition," given that he was still abusing illegal substances, being dishonest with the court about his substance abuse, and denying that he had a problem. The court further found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect and that termination of his rights was necessary for the children's welfare. As such, the court terminated

---

[3]Although the guardian filed the motion to terminate petitioner's improvement period, the motion indicated that both the guardian and "the [p]etitioner" requested that the improvement period be terminated. The DHHR was the petitioner below.

petitioner's parental, custodial, and guardianship rights to the child.[4] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the testimony of Mr. Lewis "did not rise to the level needed for termination of his parental rights." This argument, however, is legally flawed, given that the circuit court did not base termination of petitioner's rights upon this expert's testimony alone. Petitioner is correct that "'[t]he standard of proof required to support a court order limiting or terminating parental rights to the custody of minor children is clear, cogent and convincing proof.'" Syl. Pt. 3, *In re Jessica M.*, 231 W. Va. 254, 744 S.E.2d 652 (2013) (citation omitted). What petitioner fails to recognize, however, is that the circuit court considered extensive evidence in reaching its decision to terminate his rights beyond the testimony from this expert witness.

Petitioner appears to argue that simply because the expert could not conclusively testify to having witnessed petitioner ingest drugs, the DHHR somehow failed to establish that his substance abuse persisted. However, he ignores the fact that the DHHR introduced text messages between petitioner and the mother in which he admitted to his continued substance abuse and sale of controlled substances during the proceedings. Further, petitioner relies heavily on the argument that all the drugs for which he tested positive must have come from environmental exposure, despite the fact that he admits several times in his brief on appeal that some screens displayed levels "above the environmental cut off values." It is unclear why petitioner expects this Court to grant him relief upon his assertion that he did not knowingly abuse drugs when he admits that several screens contained levels beyond those that could be explained by

---

[4]The mother is currently participating in an improvement period. The permanency plan for the child is reunification with the mother upon her successful completion of her improvement period, while the concurrent permanency plan is adoption in the current foster home.

environmental exposure. On this issue, the record shows that the court heard petitioner's testimony, in which he indicated that he did not abuse controlled substances, and the testimony of the expert, who opined that petitioner likely ingested the drugs, and made a credibility determination that we decline to disturb on appeal. *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). While it is true that the expert admitted that he could not, definitively, say that such environmental exposure was not possible, he was not required to reach such a conclusion in order to give his opinion. When coupled with the other evidence of petitioner's ongoing substance abuse, we find that petitioner is entitled to no relief in this regard.

Petitioner next argues that the DHHR failed to consider less-restrictive dispositional alternatives to the termination of his parental, custodial, and guardianship rights. However, petitioner cites to no authority that would require the DHHR in an abuse and neglect proceeding to recommend any such dispositional outcome or require a circuit court to accept such a recommendation outright. Instead, petitioner relies on holdings wherein this Court has required *circuit courts* to implement the least restrictive alternative at disposition. *See* W. Va. Code § 49-4-604(c) (directing that "the court shall give precedence to dispositions in the following sequence"); *State v. C.N.S.*, 173 W. Va. 651, 656, 319 S.E.2d 775, 780 (1984) (explaining that West Virginia Code § 49-4-604 "provides a number of dispositional alternatives which the court may consider, giving precedence to the least restrictive alternative appropriate to the circumstances"). As such, none of the authority upon which petitioner relies entitles him to relief.

More importantly, petitioner ignores the fact that West Virginia Code 49-4-604(c)(6) permits circuit courts to terminate parental, custodial, and guardianship rights upon finding that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected and that termination of parental, custodial, and guardianship rights is necessary for the child's welfare. Here, the circuit court made both findings upon substantial evidence, and petitioner does not challenge these findings on appeal. Because petitioner provides no substantive argument against the court's extensive findings in support of the termination of his rights, he cannot be entitled to relief on appeal. Further, as this Court has held,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on the overwhelming evidence in support of these determinations, we find no error in the circuit court's termination of petitioner's parental, custodial, and guardianship rights.

5

Finally, petitioner raises an assignment of error alleging that the DHHR "failed to provide a level of fundamental fairness" to him because a DHHR worker at the dispositional hearing testified that she recommended an improvement period for the mother but not for him.[5] According to petitioner "[i]t would appear that the Department is applying a double standard in this case" because he alleges that the DHHR acknowledged that he made improvements in the case and shared a bond with the child. We disagree and note that petitioner clearly identifies in his brief to the Court that the key difference in the DHHR's recommendations for the parents; namely, the fact that the mother entered drug rehabilitation and petitioner did not. It is unclear why petitioner does not recognize that the mother's ability to acknowledge her substance abuse and the need to treat it resulted in the DHHR supporting an improvement period for her, while petitioner's continued refusal to acknowledge his substance abuse and his dishonesty with the court and the parties concerning his ongoing drug use made him an unsuitable candidate for yet another improvement period. *See In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) ("Failure to acknowledge . . . the truth of the basic allegation pertaining to the alleged abuse and neglect . . . results in making . . . an improvement period an exercise in futility at the child's expense."). Simply put, the parents were in significantly different positions at the time of the final dispositional hearing, and the DHHR's differing recommendations for them does not evidence any unfairness or prejudice to petitioner.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 7, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: June 3, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

---

[5]In support of this assignment of error, petitioner also alleges that the DHHR failed to timely file a family case plan prior to disposition. According to West Virginia Code § 49-4-604(a), "[c]opies of the child's case plan shall be sent to the child's attorney and parent, guardian or custodian or their counsel at least five days prior to the dispositional hearing." According to the docket sheet, the DHHR filed the case plan on November 6, 2020, which was less than five days before the final dispositional hearing. However, petitioner cites to nothing in the record to show that he objected to the late filing or otherwise preserved this issue for appeal. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co.*, Inc., 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009). As such, petitioner has waived this issue on appeal.